PER CURIAM.
Griffin Sikes, Jr., an attorney, challenges a February 10, 2016, order of the Montgomery Circuit Court (“the trial court”) that ordered him to pay $3,000 as a sanction for vexatious discovery practices.
The record[1] indicates that Sikes represented Rosalyn M. Caplan in a tort action in the trial court in which Caplan sought an award of damages from Patty S. Benator (“Benator”), Gene A. Benator, Linda S. Fleet (“Fleet”), and Stuart L, Fleet; later, a probate-court action involving the estate of Edgar K. Simon, Jr., was removed to the trial court and consolidated with the tort action. Caplan and Simon were in a relationship for a number of years, and they lived together in Simon’s home in Montgomery from approximately 2005 until Simon’s death on April 22, 2015. Benator and Fleet are Simon’s daughters and are the coexecutors of Simon’s estate (“the estate”); Gene Benator and Stuart Fleet are, respectively, Benator’s husband and Fleet’s husband. Under the terms of Simon’s will, the house Simon and Caplan had shared during their relationship was left to Benator and Fleet, but the will also contained a provision allowing Caplan to live in the house for 90 days following Simon’s death. Simon also made a specific bequest to Caplan from his estate. In her June 16, 2015, complaint in the tort action, Caplan alleged, among other things, that the defendants’ conduct toward her since Simon’s death had caused her to suffer a heart attack.
The history of the discovery dispute that forms the basis of this petition for a writ of mandamus is as follows. On June 18, 2015, Caplan filed a notice of intent to serve a nonparty subpoena on Gerald Hartley, Wade Hartley, and Davis Hartley of the law firm Hartley & Hartley, seeking the production of
“all written or recorded materials generated or acquired by the law firm of Hartley & Hartley, including all of its members, associates and staff in the course of administering the Estate of Edgar K. Simon, Jr., including but not being limited to all notes, letters, emails, pleadings, interview notes or transcipts *841 [sic], memos, tape recordings, transcripts, etc.”
On June 21, 2015, Caplan filed a motion in limine seeking a ruling from the trial court determining that no communication between Fleet and Benator, who, as previously mentioned, are the coexecutors of the estate and the attorneys from Hartley & Hartley (“the Hartley attorneys”), who represented the estate, could be considered subject to the attorney-client privilege and, therefore, not discoverable. Ca-plan argued that, in the tort action, she had named Benator and Fleet as defendants in their individual capacities rather than as defendants in their capacities as coexecutors of the estate. In that motion, Caplan alleged that the Hartley attorneys had withdrawn from their representation of the estate.[2] The essence of Caplan’s argument in support of her motion in li-mine is best summarized in her statement in that motion that,
“[wjhether [Benator] and [Fleet] engaged in the course of conduct they took in April, May, and June 2015, as alleged in the Verified Complaint, in open, knowing, deliberate and intentional violation of their fiduciary duties, i.e., after having been specifically advised by the [Hartley attorneys] that such conduct was violative of their duties and specifically advised against continuing in that course of conduct is highly relevant to most of [Caplan’s] claims herein.”[3]
Benator and Fleet filed an objection to Caplan’s notice to serve a nonparty subpoena, arguing that the documents requested were subject to the attorney-client privilege, were attorney work product, and were not relevant. They also filed an opposition to Caplan’s motion in limine. The trial court set the discovery dispute for a hearing, and the parties filed supplemental briefs in the trial court in support of their respective positions.
On July 31,2015, Caplan filed a notice of her intent to serve a nonparty.subpoena on the Hartley attorneys, seeking the production of , .
“full, complete, legible copies of all written or recorded materials generated or acquired by the law firm Hartley & .Hartley, or by any of its members .or staff, including Gerald W, Hartley, G. Wade Hartley, and Davis B, Hartley in the course of the administration of the Estate of Edgar .K. -Simon, - Jr.. Such written or recorded materials shall include, but not be limited, to all pleadings, notes, letters, emails, text messages, notes of telephone calls or conversations, phone logs, billing records, interview notes, transcripts, memos, audio recordings, or other materials containing informational content in any case file or case files kept or maintained concerning the Estate of Edgar K. Simon.”
Benator and Fleet objected to the July 31, 2015, notice of intent to serve a no'nparty subpoena, and Caplan moved the trial court to overrule that objection.
The -parties -filed briefs in support of their positions on the discovery dispute, and the trial court conducted a hearing to consider the arguments of counsel. On August 18, 2015, the trial court entered an order ruling1 on the discovery dispute concerning Caplan’s requests - for- nonparty subpoenas that sought certain information *842 from the Hartley attorneys. That order reads as follows:
“Before the court is [Fleet and Benator’s] objection to issuance of a subpoena. [Caplan] is a beneficiary of the will of Mr. Simon. [Fleet and Benator] are the personal representatives of Simon’s estate. The personal representatives hired the firm of Hartley & Hartley to advise the estate. Caplan then sought to subpoena the attorney’s files concerning that representation and [Fleet and Benator] protested. Both attorneys filed excellent briefs and, in the absence of controlling precedent on point in Alabama, made persuasive policy arguments for their positions. The Court concludes, however, that the weight of authority in Alabama is to the effect that when the personal representative employs an attorney to advise on estate matters, the attorney’s client is the personal representative and none other. Furthermore, no exception is delineated in Rule 502 Alabama Rules of Evidence which would abrogate the privilege in this instance. The subpoena is quashed.”
(Emphasis added.)
Caplan did not seek appellate review of the August 18, 2015, order. Rather, on September 10, 2015, Caplan filed requests for production that, in pertinent part, requested copies of e-mails, text messages, letters, written correspondence, or recordings of any communications between Ben-ator and Fleet and the Hartley attorneys or Jack Owen, Benator’s attorney; any other documents pertaining to Benator’s and Fleet’s dealings with the Hartley attorneys; any documents containing information regarding whether the Hartley attorneys had advised Benator and Fleet concerning their conduct toward Caplan and the content of any such advice; and any documents or recordings that might substantiate the nature of that advice.
On October 4, 2015, Caplan served a notice of intent to serve a nonparty subpoena on the Hartley attorneys and a notice of intent to depose those attorneys. In both notices, Caplan demanded that the Hartley attorneys produce
“all billing statements and records, time sheets or other written or recorded materials stating, showing, evidencing, or indicating charges for legal services, the amounts of time expended in providing legal services, and the dates and times legal services were rendered for the Estate of Edgar K. Simon, Jr., or its executors, Patricia S. Benator and/or Linda S. Fleet.”
Benator and Fleet each objected to the deposition notice and the notice of intent to serve the nonparty subpoena, arguing that Caplan was repeating her earlier efforts to access information that the trial court had already determined was barred by the attorney-client privilege. Caplan argued that the records she had requested were not privileged and not within the scope of the August 18, 2015, order.
On October 21, 2015, Caplan filed a notice of intent to depose Benator and directed Benator to bring with her
“[a]ll written or recorded materials constituting, containing, memorializing, recording, noting, or reflecting any written or oral communications, including but not being limited to emails, texts, letters, conversations, or telephone conversations, that occurred between April 1, 2015 and the present between Linda S. Fleet and any of the following persons: “Rosalyn Caplan, Stan Caplan, Carol Caplan Sawyer, Davis Hartley, Gerald Hartley, [and] Wade Hartley.”
On November 20, 2015, Benator and Fleet moved for a partial summary judg *843 ment on Caplan’s claim in the tort action asserting trespass. The trial court scheduled a hearing on that motion. Caplan opposed that partial-summary-judgment motion. The trial court later granted the motion for a partial summary judgment on Caplan’s trespass claim.
On December 4, 2015, Caplan propounded her “third discovery requests,” which were composed of interrogatories and a demand for a “privilege log.” In her interrogatories to Benator and Fleet, Caplan demanded information regarding whether either Benator or Fleet had received legal advice with regard to their interactions with Caplan in April 2015 and, if so, the nature of any such advice. Caplan then requested that, for each communication that Benator or Fleet might claim was subject to the attorney-client privilege, Benator and Fleet create a “privilege log” setting forth detailed information regarding why that communication might be privileged.[4] Caplan sought similar information with regard to other specific factual inquiries and, in addition, sought a statement from both Benator and Fleet that listed “as fully and completely as you are able, all of the communications and advice that occurred and/or were provided by and between you and the attorney.” Benator filed an objection to Caplan’s December 4, 2015, third discovery requests.
On December 16, 2015, Caplan filed a motion seeking to compel Benator and Fleet to answer questions that they had refused to answer during their depositions. Caplan asserted that all of those deposition questions pertained to communications between Benator and Fleet and the Hartley attorneys or Owen. In support of that motion, Caplan submitted a brief that set forth arguments similar to those she had set forth regarding the discovery dispute that the trial court had ruled on in its August 18, 2015, order and in support of her July 2015 discovery requests. Also on that date, Caplan filed documents in which she purported to “waive” any attorney-client privilege that might exist between any attorney for the estate and Benator and Fleet. Fleet responded by arguing that Caplan had no privilege to waive, and she moved to strike the documents in which Caplan stated her desire to “waive” any privilege.
On January 11, 2016, Caplan filed a motion asking the trial court to reconsider its August 18, 2015, ruling on the issue of the attorney-client privilege as precluding much of the discovery requests. On January 12, 2016, Caplan filed a “Fourth Discovery Request[],” seeking information regarding whether Benator or Fleet had exercised a power of attorney on behalf of *844 Simon between 2010 and the date of his death. ■ ,
On-January 14, 2016, Gaplan filed a motion to compel Benator -and Fleet to respond to the December 4, 2015, third requests for discovery. Attached to that motion to compel is a letter from Caplan’s attorney, Sikes, to Owen that, in part, notes that Owen had failed to substantively respond to.those discovery requests and, instead, had again asserted the defense of attorney-client privilege..
On January 15, 2016, Caplan moved the trial court to declare that Benator and Fleet had waived the attorney-client privilege by failing to respond to her December 4,, 2015, third requests for discovery. Ca-plan submitted a brief, similar to others submitted on the issue, arguing that the discovery she sought was not subject to the, attorney-client privilege. Also in her January 15, 2016, motion,- Caplan asked the trial court to impose “sanctions against Fleet and Benator in the amount of $3,000 each for. their failure to respond” to some questions during their depositions and for .their denial of her request, asserted in the December 4, 2015, third discovery requests, that Benator and Fleet produce privilege logs.
• On January 18, 2015, Fleet filed a motion seeking the imposition of sanctions against Caplan for “vexatious discovery” requests. In that motion, she sought an award of an unspecified amount for an attorney fee and expenses that she and Benator had incurred since the entry of the August 18, 2015, order upholding their objections to Caplan’s discovery 'requests on the basis of their invocation of the attorney-client privilege.
The trial court conducted a hearing on the pending motions on January 19, 2016. During that hearing, after considering the arguments' of counsel, the trial court informed the attorneys that it was tiring of the consistent discovery disputes and that it .had already ruled on the issue of the attorney-client privilege as it pertained to Caplan’s discovery requests. The trial court also stated during that hearing that if the attorneys were before it on another discovery dispute of that nature, it would “sanction whomever [it found] to be at fault.”
On February 9, 2016, Caplan filed in the trial court a “motion for certification of controlling issues,” requesting permission to appeal six interlocutory rulings: the order granting the motion for. a partial summary judgment on Caplan’s trespass claim in the tort action, and the purported denials of five of Caplan’s motions pertaining to her attempts to obtain discovery since December 2015 on the issue of the communications between Benator and Fleet and the Hartley attorneys or Owen. At the time Caplan filed that motion, the trial court had not yet ruled on the five discovery motions. We note that Rule 5(a), Ala. R.App. P., allows a party to seek a permissive appeal of an interlocutory order when a trial court certifies an issue addressed in the order as a controlling question of law. Caplan sought to have the trial court certify, as issues for appellate review, (1) whether the attorney-client privilege precluded Caplan’s.discovery requests pertaining to any legal advice Benator or Fleet was provided with regard to their interactions with Caplan after Si-mons’s death and (2) whether, under the terms of Simon’s will, Caplan had an exclusive right to possession of the home she had shared with Simon for the 90 days following his death.
The trial court entered the following order on February 10, 2016:
“Once again the Court is dragged into a discovery dispute concerning attorney-client privilege in this matter. The Court’s patience, which has never been *845 overflowing, is being sorely tried after issuing one order, quashing a subpoena, and delivering a le,cture to the parties on the subject. Now [Caplan] is back for another bite at the apple asserting that [Benator and Fleet] waived the privilege and seeking, sanctions of $3,000.00. Benator objected to [Caplan’s] third discovery request while Fleet filed her own motion for sanctions (it is unclear if Gene Benator or Stuart Fleet are still parties or if anyone cares about their status). Without taking a giant leap of faith, the Court believes'that it is safe to treat Fleet’s request for sanctions as an objection to the discovery.
“[Caplan’s] argument of waiver centers around the failure of the defendants to provide [Caplan] with a privilege log which [Caplan] represents is mandated by the [Alabama Rules of Civil Procedure]. It is not, as the Committee Comments make plain. What is required is that [Caplan] be given sufficient information to evaluate the applicability of the privilege. At no time prior to the Court’s [order of August 18, 2015,] on this issue did [Caplan] complain that she was unaware of the basis for the invocation of the privilege or that she needed more facts to evaluate the assertion. Instead, she was content for the Court to rule on the issue until that ruling went against her. Since that time, she has schemed to obtain that same information despite the Court’s ruling.
“The stated basis for this new dispute is the- claim that [Benator and Fleet] waived the privilege. They have not. Instead, they have promptly and ardently asserted the privilege. At the last hearing before this Court, the attorneys were warned that further involvement by the Court in discovery disputes would prove expensive. [Caplan] thinks that $3,000 is an appropriate sanction in this instance and so be it. [Sikes] is ordered to pay to [Benator and Fleet] the total sum of $3,000 for continued obfuscation on discovery.
“[Caplan’s] motions are denied.”
The next day, the trial court entered an order reiterating its earlier ruling granting Benator and Fleet’s motion for a partial summary judgment on Caplan’s trespass claim in the tort action and denying all of Caplan’s pending motions regarding discovery. In a separate order, the trial court also- denied Caplan’s motion to certify' issues and for a permissive appeal, finding that the first issue should have been raised within 28 days of the entry of the August 18, 2015, order, see Rule 5(a)(1), Ala. R.App. P., and that the second issue did not present a controlling question of law. See Rule 5(a), Ala. R.App. P.
On February 22, 2016, Caplan moved the trial court to reconsider its February 10, 2016, order imposing sanctions on Sikes. The trial court denied that motion on February 25, 2016. On February 29, 2016, Sikes filed a notice of appeal to our supreme court, which transferred the matter to this court pursuant to § 12-2-7, Ala. Code 1975.
This court asked the parties to file letter briefs regarding the finality of the February 10, 2016, order from which Sikes purported to appeal. Sikes responded by arguing that the February 10, 2106, order was a contempt order that was appealable under Rule 70A(g), Ala. R. Civ. P. This court disagreed and entered an order on May 2, 2016, stating that Sikes’s notice of appeal would be treated as a petition for a writ of mandamus. We note that the petition for a writ of mandamus is timely, because it was filed on February 29, 2016, within the 42-day presumptively reasonable period for seeking such appellate relief from the February 10, 2016, order. See Rule 21(a)(3), Ala. R.App. P. (“The *846 presumptively reasonable time for filing a petition [for a writ of mandamus] seeking review of an order of a trail court ... shall be the same as the time for taking an appeal.”); Ex parte Cowabunga, Inc., 67 So.3d 136 (Ala.Civ.App.2011) (same).
Initially, we note that this court has considered the arguments in Sikes’s brief to this court only to the extent that they pertain to the February 10, 2016, order sanctioning Sikes for abusive discovery practices. This petition for a writ of mandamus does not properly bring before this court any issue pertaining to the trial court’s rulings that Caplan’s discovery requests should not be permitted because they sought information subject to the attorney-client privilege. First, in his individual capacity, Sikes does not have the right to challenge the propriety of the August 18, 2015, order on behalf of Caplan. Also, even if Sikes could be said to have a right to challenge the August 18, 2015, order, this petition for a writ of mandamus is untimely as to that order.
In addition to the primary argument Sikes asserts with regard to the imposition of the sanction against him, Sikes’s brief submitted to this court contains three headings that we interpret as separate arguments: “(a) preventing the making of a record for appellate review,”[5] “(b) legitimacy of the issue of privilege,” and “(c) legitimacy of the issue of waiver , of attorney-client privilege by failure to comply with Rule 26(b)(6)[, Ala. R. Civ. P.].” Sikes does not make any argument that the trial court prevented him from making a record with regard to its February 10, 2016, ruling. Rather, in that section of his brief, Sikes- only contends that he vigorously asserted his client’s legal position.
*847 With regard to the “legitimacy of the issue of privilege” argument, Sikes argues the merits of Gaplan’s position with regard to discovery, and he asserts that the trial court recognized the legitimacy of Caplan’s argument in its August 18, 2015, order by stating that both parties had submitted excellent briefs and that the issue appeared to be one of first impression. The February 10, 2016, order that is challenged in this petition for a writ of mandamus makes no ruling with regard to the attorney-client-privilege issue, and any challenge of the August 18, 2015, ruling on that issue is untimely. Even assuming that Sikes had the right to assert an argument pertaining to the propriety of Ca-plan’s discovery requests, this court cannot address issues not ruled on by the trial court in the February 10, 2016, order that is the subject of Sikes’s petition for a writ of mandamus.
With regard to the third heading/argument, Sikes asserts summarily that a failure to produce the privilege logs Caplan requested in the December 4, 2015, third discovery requests' amounts to a waiver of the claimed privilege. He then cites a list of federal-court cases that analyze Rule 26, Fed.R.Civ.P., and concludes with an assertion that he is entitled to a reversal of the sanctions order. With regard to that issue, the trial court did rule against Caplan by determining that Benator and Fleet had not waived their privilege. Sikes does not explain to this court, however, how- that determination affected his rights or the trial court’s decision to sanction him for abusive discovery practices. Further, even assuming that Sikes has the right to properly assert an argument that the denial of Caplan’s request for “privilege logs” affected the trial court’s decision to sanction him, Sikes doe not challenge, in his brief submitted to this court, the trial court’s determinations in its February 10, 2016, order that Benator and Fleet objected to his December 4, 2015, third discovery requests, that Caplan or Sikes had failed to timely request a “privilege log,” or that Benator and Fleet had not waived their right to assert attorney-client privilege in response to the discovery requests Sikes made on behalf of Ca-plan. Thus, there were alternate bases for the trial court’s ruling that Sikes has failed to address in his brief on appeal, and, therefore, he has waived any argument as to the propriety of those alternate bases for the trial court’s ruling. “This court is required to affirm a judgment if the appellant has waived any arguments regarding an alternative basis for the judgment.” Drake v. Alabama Republican Party, 209 So.3d 1118, 1122 (Ala.Civ.App.2016); see also Austin v. Providence Hosp., 155 So.3d 1028, 1031 (Ala.Civ.App.2014) (‘When a trial court enters conclusions of law stating alternative legal grounds for its judgment, the failure of an appellant to show error as to each ground in his or her opening brief constitutes a waiver of any argument as to the omitted ground and results in an automatic affirmance of the judgment.”).
Sikes’s primary argument is that the trial court erred in imposing a sanction against him. Although most cases addressing discovery violations address a party’s failure to respond to discovery, the prevailing principle with regard to discovery matters is the same: the trial court is afforded broad discretion in managing discovery, and it may sanction parties who do not comply with the discovery process. Ex parte Community Health Sys. Prof'l Servs. Corp., 72 So.3d 595, 603 (Ala.2011) (“The trial court has broad discretion in overseeing discovery and in protecting persons from whom discovery is sought.”). Our supreme court has stated:
*848 “The trial court is vested with broad and considerable discretion, in controlling the discovery process and in making rulings on all matters pertaining to discovery, including the authority to make such rulings as are necessary to protect .the integrity of the discovery process. See Ex parte Sargent Industries, Inc., 466 So.2d 961 (Ala.1985); Ex parte McClarty Const & Equipment Co., 428 So.2d 629 (Ala.1983); Hancock v. City of Montgomery, 428 So.2d 29 (Ala.1983); Ex parte Allstate Ins. Co., 401 So.2d 749 (Ala.1981); Ex parte Old Mountain Properties, Ltd., 415 So.2d 1048 (Ala.1982), cert. denied, Old Mountain Properties, Ltd. v. April Investments, Inc., 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Furthermore, deeply rooted 'in the common law is the court’s power to manage its affairs in order to achieve the orderly and expeditious disposition of cases, including the authority to impose reasonablé and appropriate sanctions for failure to comply with discovery. See Carlucci v. Piper Aircraft Corp., 775 F.2d 1440 (11th Cir.1985); Flaksa v. Little River Marine Construction Co., 389 F.2d 885 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).
“The choice of discovery sanctions is within the trial court’s discretion and will not be disturbed on appeal absent gross abuse of discretion, Johnson v. Langley, 495 So.2d 1061 (Ala.1986); Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984); Weatherly v. Baptist Medical Center, 392 So.2d 832 (Ala. 1981), and then only upon a showing that such.abuse of discretion resulted in substantial harm to appellant. Edward Leasing Corp. v. Uhlig & Associates, Inc., 785 F.2d 877 (11th Cir.1986).”
Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989) (footnote omitted).
Sikes maintains that the trial court erred in ordering that he be sanctioned for discovery abuse because, he says, the order constituted an ex post facto sanction. Sikes argues that it is clear that the trial court believed that he had violated the directive against further allegedly abusive discovery issued by the trial court during the January 19, 2016, hearing, and he points out that the filing for which he was sanctioned was filed before that hearing, and, therefore, he argues that he could not have violated the January 19, 2016, directive. Sikes contends that he had no notice that repeated requests seeking discovery of information that the trial court had, months earlier, determined was subject to the attorney-client' privilege might subject him to sanction by the trial court.
In support of his argument, Sikes cites only Brooks v. Alabama State Bar, 574 So.2d 33 (Ala.1990), which did not involve a discovery dispute in a trial court. Rather, in that case, a district attorney was charged by the Disciplinhry Commission of the Alabama State Bar with violating the Code of Professional: Conduct regarding extrajudicial statements she had made while prosecuting a criminal action. Our supreme court stated that, at the time she niade those statements, the district attorney could have reasonably relied on case-law holding that such statements by a district attorney were not subject to discipline by the Disciplinary Commission, and it noted that an amendment to the Code of Professional Conduct that prohibited her statements was made two months after, the district attorney had made the statements at issue. 574 So.2d at 34. The court stated that “[d]ue process of law requires fair notice that one’s conduct is subject to law or regulation” and that, because she had not had such notice, the district attor *849 ney was not subject to discipline for the conduct at issue. Brooks, 574 So.2d at 34. The court explained:
“ ‘The ex post facto principle applies to any activity in which a person engages with a reason to believe that it does not give rise to a particular penalty. This additional protection comes not from the ex post facto constitutional prohibition itself but from the “due process” clause of the Fifth amendment, which incorporates the same concept for judicial interpretations and holds that they rise to the level of a guaranty. Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).’ ”
Brooks, 574 So.2d at 34 (quoting United States v. Hayes, 703 F.Supp. 1493, 1502 (N.D.Ala.1989)).
We agree with Sikes that, as a part of its February 10, 2016, ruling, the trial court appears to have believed that the motion he filed on Caplan’s behalf, seeking to have the trial court declare that Benator and Fleet had waived their attorney-client-privilege claim, had been filed after the January 19, 2016, hearing.' That conclusion, however, is called into question by the trial court’s denial of the motion to reconsider the sanction order, in which that possible mistake was pointed out to the trial court. Regardless, Sikes has not cited to this court any authority for the proposition that the trial court could enter a sanction against him for vexatious discovery practices only after a warning, whether by a written order or an oral instruction from the trial court, that further vexatious discovery requests might result in a sanction.
Further, we disagree with Sikes that the trial court relied solely on his violation of the oral warning provided during the January 19, 2016, hearing in reaching its decision to sanction Sikes. In the February 10, 2016, order, the trial court noted that it had already ruled on Caplan’s discovery requests and had denied her second set of requests for similar information, that it had been called upon multiple times to rule again on that issue, that' Benator had. objected for a third time to- Caplan’s discovery requests, and that' it had before it Fleet’s motion for sanctions. We -note that, in the motion requesting that sanctions be imposed against Sikes', Fleet’s attorney argued that Sikes had shown a blatant disregard for the trial court’s earlier rulings and that Sikes’s repeated attempts to obtain the information the trial court had ruled was subject to the attorney-client privilege had increased the litigation costs for Fleet and Benator. Sikes has cited no authority indicating that the trial court could not rule on that motion for sanctions in the absence of a prior oral or written warning, and, under the facts of this case, we conclude that no such warning was necessary. Although we agree with Sikes that an, attorney has an obligation to diligently represent his or her client, Sikes’s repeated discovery requests, motions to compel, and the request to deem the privilege waived, all asserted on behalf of Caplan, were clearly efforts to circumvent the trial court’s August 18, 2015, ruling. See, e.g., Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 106 (Ala.1981) (“A party may both take depositions and propound written interrogatories, as long as he is not trying to circumvent a ruling by the trial court, or to harass or oppress the adverse party.”).
Sikes was required to demonstrate that he has a clear, legal right to the relief he seeks in this court.
“This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet, certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a *850 clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court’s jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala. 1997). Because mandamus is an extraordinary remedy, the . standard by which this Court reviews a petition for the writ of mandamus is to determine whether the trial court has clearly abused its discretion. See Ex parte Rudolph, 515 So.2d 704, 706 (Ala.1987).”
Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000).
“[T]he trial court is vested with broad and considerable discretion in managing the discovery process.” Ragan v. Blazon Flexible Flyer, Inc., 590 So.2d 882, 883 (Ala.1991). In this case, given the entirety of the circumstances, we cannot say that Sikes has demonstrated that the trial court abused its broad discretion such that he has shown a clear, legal right to a writ of mandamus. Ex parte Flint Constr. Co., supra. Accordingly, we deny the petition for a writ of mandamus.
PETITION DENIED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., concurs specially.

. Sikes filed a notice of appeal in this court, and after the record was completed, this court decided to treat the notice of appeal as a petition for a writ of mandamus.

. The record indicates that the Hartley attorneys had represented the estate in an action in the Montgomery Probate Court but that those attorneys had withdrawn from that representation on June 10, 2015.

. That allegation actually listed "Ms. Caplan" in place of Fleet’s name, but it is clear from the context of the allegation that the use of Caplan’s name at the beginning of the statement was a clerical error. •

. For example, with regard to one part of the interrogatories, Caplan specified that the "privilege log” she requested set forth, for each claimed privileged communication, the following information:
“a. a clear, definitive description of what the document is and the number of pages it contains;
"b. the date it was created or written;
"c. the name, address and employer of the author of the document, or the person maldng the recording, or taking the statement or the like;
"d. all of the subjects or topics addressed in the document;
"e. the persons to whom the document is addressed;
"f. the persons who are indicated thereon as having received copies or who in fact received a copy of the document;
"g. the name, address, job title, and employer of all of the persons known or believed to have received or seen the document or any copy or summary thereof;
"h. the purpose for which the document was created and transmitted;
"i, any other facts relevant to the elements of the particular privilege asserted or that would bear on the validity of any claim of privilege.”

. We interpret this heading as impermissibly seeking review of the discovery rulings. One of the bases that can warrant mandamus review of a discovery order is a trial court’s refusal to allow a party to make a record of the alleged discovery error; our supreme court has explained:
"Generally, an appeal of a discovery order is an adequate remedy, notwithstanding the fact that that procedure may delay an appellate court’s review of a petitioner’s grievance or impose on the petitioner additional expense; our judicial system cannot afford immediate mandamus review of every discovery order. See Walker v. Packer, 827 S.W.2d 833, 842 (Tex.1992) (‘Mandamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial.’). In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala.2001) (Tf a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal.’); (b) when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party, see, e.g., Ex parte Compass, 686 So.2d 1135, 1138 (Ala.1996) (request for ‘every customer file for every variable annuity’ including annuity products the plaintiff did not purchase); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court imper-missibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case—that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala.1992).”
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813-14 (Ala.2003) (footnote omitted).