BRYAN, Justice.
William K. Norvell appeals from a summary judgment entered by the Lauderdale Circuit Court ("the circuit court") in the action he filed against Carter Norvell and Samuel Norvell. For the reasons set forth herein, we affirm the judgment in part, reverse it in part, and remand the cause for further proceedings.
Facts and Procedural History
The proceedings in this case arose from a dispute between William and his brothers, Carter and Samuel, concerning a transaction in which their mother, Martha Neal Norvell, sold Carter a certain house on lakefront property ("the lake house"). The pertinent facts giving rise to the dispute are as follows.
In 2007, Martha, to provide for her future care, established a revocable trust ("the trust") and executed a deed transferring title to the lake house to the trust. Carter was both the trustee and the beneficiary of the trust. Also in 2007, Martha executed a will that, because her husband has preceded her in death, divides her estate in equal shares among three of her four sons, Carter, Samuel, and Neal Norvell, expressly excluding William.[1] The will appoints Carter personal representative of Martha's estate.
However, on May 11, 2012, Martha executed a "revocation of trust agreement" pursuant to which she revoked the trust and expressed her desire to transfer title to the lake house from the trust to herself; shortly thereafter, Carter, as the trustee, executed a deed transferring title to the lake house to Martha. Also on May 11, 2012, Martha executed a codicil to her 2007 will to devise and bequeath her assets to Carter, Samuel, Neal, and William in equal shares and to appoint Carter and William co-personal representatives of her estate.
On May 13, 2012, Martha executed a durable power of attorney appointing Carter and Samuel her co-attorneys-in-fact ("the POA"). Two days later, Martha executed a second codicil to her 2007 will to appoint Carter and Samuel, rather than Carter and William, co-personal representatives of her estate. However, pursuant to the May 11, 2012, codicil, William remained an equal beneficiary of Martha's estate.
On August 29, 2012, Martha executed an untitled, notarized document that states, in full:
"For certain value received, as evidenced by Promissory Note dated September 6, 2012, I, Martha [Neal] Norvell, do hereby desire and wish to sell to my son, Carter C. Norvell, [the lake house]. I do this with full knowledge and understanding and it is my intention that Carter C. Norvell be the sole owner of said property. I also authorize my son, Samuel S. Norvell to act as my attorney-in-fact, exercising his authority as power of attorney to execute all necessary documents to complete this transaction."
On September 6, 2012, Samuel, pursuant to that statement and his authority under the POA, sold the lake house to Carter for $250,000 and executed a deed effectuating the sale.
*500 On June 29, 2016, William filed in the circuit court a complaint against Carter and Samuel (hereinafter collectively referred to as "the defendants") in which he alleged that the sale of the lake house to Carter "directly thwart[ed] the intent of [Martha's] estate plan," which, William argued, was "an equal division of [her] assets to her sons upon her death"; that the $250,000 purchase price Carter paid for the lake house was less than one-third of the appraised value of the property; that the sale of the lake house to Carter, to the extent the sale constituted a gift, was prohibited by the Alabama Uniform Power of Attorney Act, § 26-1A-101 et seq., Ala. Code 1975 ("the AUPAA"); and that the deed conveying title to the lake house to Carter was facially defective. Given those allegations, William sought a judgment declaring that the POA "does not authorize the [defendants] to make any distribution of [Martha's] assets favoring one beneficiary [of her estate] over the other"; that any distribution of Martha's assets by the defendants violates Martha's testamentary intent and is therefore invalid; that the AUPAA requires the defendants to preserve Martha's assets and does not allow the defendants to "waste" the assets by "gifting" them or conveying them for consideration "below fair market value"; and that the deed effectuating the sale of the lake house to Carter is therefore void. William also asserted breach-of-fiduciary-duty and conspiracy claims and sought an accounting of Martha's assets, the nullification of the POA, and the appointment of a conservator of Martha's assets. The defendants filed an answer and, pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975 ("the ALAA"), filed a counterclaim seeking attorney fees and costs.
On May 2, 2017, William amended his complaint to add claims of "intentional interference with inheritance expectancy" and undue influence. Although it is undisputed that Martha was competent in 2012 when she executed the August 29, 2012, statement expressing her desire to sell the lake house to Carter, William alleged that the defendants had taken advantage of the fact that Martha was "91 years old, frail, and has a weak mind" and that they had "exercised undue influence over her to make inter vivos transfers and/or dispositions contrary to her estate plan and wishes." William's amended complaint withdrew his requests for an accounting of Martha's assets, the nullification of the POA, and the appointment of a conservator of Martha's assets. However, that same day William filed in the Lauderdale Probate Court ("the probate court") a petition seeking the same relief.[2]
On August 18, 2017, the defendants filed a motion for a summary judgment in which they argued that William lacked standing to prosecute his claims because, they said, *501 he has no ownership interest in Martha's assets; he is not a party to the POA and, thus, the defendants do not owe him a fiduciary duty; any alleged violations of the POA affected only Martha, the principal; and any alleged misconduct with respect to an inter vivos transfer on Martha's behalf affected only Martha. Thus, the defendants argued, William was attempting to "assert the rights of a third party not named in the action." Additionally, the defendants argued that William's undue-influence claim was premature because, they said, Martha's will "must be offered for [p]robate before it can be contested." Likewise, the defendants argued that William's "intentional-interference-with-inheritance-expectancy" claim was premature because, they said, Martha's will "is of no effect until she dies" and argued that, regardless, such a claim "is not a recognized claim under Alabama law." William filed a response to the defendants' summary-judgment motion in which he argued that he did have standing to prosecute his claims. According to William, an agent's fiduciary duty under a power of attorney extends to the principal's beneficiaries. In addition, William cited § 26-1A-116(a), Ala. Code 1975, which provides, in pertinent part:
"(a) The following persons may petition a court to construe a power of attorney, determine the validity of a power of attorney, or review the agent's conduct, and grant appropriate relief:
"....
"(4) the principal's spouse, parent, or descendant ...."
(Emphasis added.) Thus, William argued, as a descendant of Martha, he had standing to prosecute claims challenging the defendants' alleged abuse of their authority under the POA. As to his "intentional-interference-with-inheritance-expectancy" claim, William conceded that there are no Alabama cases expressly recognizing such a tort but argued that the "mere fact that no appellate court has specifically ruled on the merits of the claim does not preclude this Court from considering it." William did not acknowledge or address the defendants' contention that his "intentional-interference-with-inheritance-expectancy" and undue-influence claims were premature.
On December 13, 2017, the circuit court, without stating its reasons, entered a summary judgment in favor of the defendants.[3] William filed a motion to alter, amend, or vacate the judgment, which the circuit court denied, and William appealed.[4]
*502 Standard of Review
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038 (Ala. 2004).
Discussion
I.
We first review the summary judgment with respect to William's "intentional-interference-with-inheritance-expectancy" and undue-influence claims. As to those claims, the defendants asserted multiple grounds in support of their motion for a summary judgment, including that the claims were premature, i.e., not ripe for adjudication. Because the circuit court did not state the ground or grounds upon which it based the summary judgment, we presume the circuit court relied on each of the grounds asserted by the defendants in their summary-judgment motion. See Ramson v. Brittin, 62 So.3d 1035, 1038 (Ala. Civ. App. 2010) ("As noted, the trial court did not state its basis for entering the summary judgment. In such cases, we must presume that the trial court relied on every ground asserted in the summary-judgment motion." (citing Soutullo v. Mobile Cty., 58 So.3d 733 (Ala. 2010) ) ); and State Dep't of Revenue v. Hoover, Inc., 993 So.2d 889, 892-93 (Ala. Civ. App. 2007) ("The trial court's order granting Hoover's summary-judgment motion did not specify the ground, or grounds, upon which it had based its decision. Therefore, we will assume, for the purposes of this appeal, that the trial court agreed with both the collateral-estoppel and the failed-justification assertions by Hoover.").
In support of his argument that the circuit court erred by entering a summary judgment on his "intentional-interference-with-inheritance-expectancy" claim, William contends that the fact that Alabama's appellate courts have not heretofore recognized a claim of tortious interference with an inheritance does not warrant a summary judgment on such a claim. In support of his argument that the circuit court erred by entering a summary judgment on his undue-influence claim, William contends that there was an "abundance of evidence" supporting that claim. William's brief, at 47. However, regardless of the merits of those arguments, William wholly ignores the circuit court's reliance on a lack of ripeness as a ground for the summary judgment on those claims.
"In order to secure a reversal, 'the appellant has an affirmative duty of showing error upon the record.' Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala. 1983). It is a familiar principle of law:
" 'When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court's order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue ... constitutes a waiver with respect to the issue.'
" Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala. 2006) (footnote omitted) (emphasis added). This waiver, namely, the failure of the appellant to discuss ... an issue on which the trial court might have relied as a basis for its judgment, results in an affirmance of that judgment. Id. That is so, because 'this court will not presume such error on the part of the trial court.'
*503 Roberson v. C.P. Allen Constr. Co., 50 So.3d 471, 478 (Ala. Civ. App. 2010) (emphasis added)."
Soutullo v. Mobile Cty., 58 So.3d at 738 (some emphasis added). See also Ex parte Sikes, 218 So.3d 839, 847 (Ala. Civ. App. 2016) ("[T]here were alternate bases for the trial court's ruling that Sikes has failed to address in his brief on appeal, and, therefore, he has waived any argument as to the propriety of those alternate bases for the trial court's ruling. 'This court is required to affirm a judgment if the appellant has waived any arguments regarding an alternative basis for the judgment.' " (quoting Drake v. Alabama Republican Party, 209 So.3d 1118, 1122 (Ala. Civ. App. 2016) (emphasis added) ) ). Thus, because William does not challenge a ground upon which the circuit court might have entered the summary judgment on his "intentional-interference-with-inheritance-expectancy" and undue-influence claims, he has waived any argument that the circuit court's reliance on that ground was error. Accordingly, because we will not presume error, we are compelled to affirm the judgment as to William's "intentional-interference-with-inheritance-expectancy" and undue-influence claims. Soutullo, supra ; Sikes, supra.
II.
We next review the summary judgment with respect to William's declaratory-judgment, breach-of-fiduciary-duty, and conspiracy claims. The only ground the defendants asserted as a basis for a summary judgment on those claims was William's alleged lack of standing. Thus, we presume the circuit court entered the summary judgment as to those claims on that ground. See Terry v. Life Ins. Co. of Georgia, 551 So.2d 385, 385 (Ala. 1989) ("The trial court entered summary judgment for Life of Georgia ..., and, although the trial court did not specify the reason(s) for its ruling, the basis for the company's motion was that Mrs. Terry had been contributorily negligent as a matter of law."). On appeal, William argues the circuit court erred by concluding that he lacked standing to prosecute his claims. We agree.
The defendants' contention that William lacked standing was based on their allegation that, in his complaint, he was attempting to assert rights or claims that, they said, belonged to Martha. This Court recently addressed similar arguments in Gardens at Glenlakes Property Owners Ass'n, Inc. v. Baldwin County Sewer Service, LLC, 225 So.3d 47 (Ala. 2016). In that case, Baldwin County Sewer Service, LLC ("BCSS"), was obligated, pursuant to a 1991 sewer agreement, to provide sewer services to the owners of lots in a subdivision in Baldwin County. After BCSS imposed a rate increase for its sewer services, five associations ("the Associations"), whose members were property owners in the subdivision, and Glenlakes Golf Club, Inc. ("the Golf Club"), sued BCSS, alleging that BCSS had violated the 1991 sewer agreement. BCSS moved for a summary judgment on multiple grounds, one of which was that the Associations and the Golf Club (collectively "the plaintiffs") lacked standing to enforce the 1991 agreement on behalf of the individual property owners in the subdivision. The trial court agreed and entered a summary judgment in BCSS's favor based upon its conclusion that, "because the Associations were 'not the owners of any interest in the property made the subject of the ... Sewer Agreement ... the Associations do not have standing to assert property damage claims on behalf of the individual owners ... [or] standing to seek enforcement of the '91 Sewer Agreement.' " Gardens at Glenlakes, 225 So.3d at 51. On appeal, the plaintiffs argued, as William does here, that the trial court erred in concluding that they lacked standing. In agreeing *504 with the plaintiffs and reversing the summary judgment, this Court stated:
"Whatever the merits of BCSS's argument that the Associations may not enforce claims of the individual owners or that the 1991 agreement does not apply to the Golf Club, it is clear that these are not issues of 'standing.'
"The concept of standing implicates a court's subject-matter jurisdiction. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999) ('When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.'). As Justice Lyons wrote in Hamm v. Norfolk Southern Ry., 52 So.3d 484, 499 (Ala. 2010) (Lyons, J., concurring specially): 'Imprecision in labeling a party's inability to proceed as a standing problem unnecessarily expands the universe of cases lacking in subject-matter jurisdiction.' In Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216 (Ala. 2010), this Court noted:
" '[O]ur courts too often have fallen into the trap of treating as an issue of "standing" that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action....
" '....
" '... The courts of this State exist for the very purpose of performing such tasks as sorting out what constitutes a cognizable cause of action, what are the elements of a cause of action, and whether the allegations of a given complaint meet those elements. Such tasks lie at the core of the judicial function. See generally, e.g., Art. VI, § 139(a), Ala. Const. 1901 (vesting "the judicial power of the state" in this Court and lower courts of the State); Art. VI, § 142, Ala. Const. 1901 (providing that the circuit courts of this State "shall exercise general jurisdiction in all cases except as may otherwise be provided by law") ....'
" 42 So.3d at 1219-21 ....
"Recently, in Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31 (Ala. 2013), this Court again examined the concept of standing and cautioned that the concept is generally relevant only in public-law cases. 159 So.3d at 44-45. In BAC we quoted Professor Hoffman:
" ' "[T]he word 'standing' unnecessarily invoked in the proposition can be erroneously equated with 'real party in interest' or 'failure to state a claim.' This simple, though doctrinally unjustified, extension could swallow up Rule 12(b)(6), Rule 17[, Ala. R. Civ. P.,] and the whole law of amendments." '
" 159 So.3d at 46 (quoting Hoffman, The Malignant Mystique of 'Standing,' 73 Ala. Law. 360, 362 (2012) ).
"In this case, the question whether the Associations may properly assert the claims of their individual members is, in fact, a real-party-in-interest inquiry. This question is distinct from the question of standing: It does not implicate the subject-matter jurisdiction of the trial court, and the trial court can address the issue, if properly raised, by applying Rule 17(a), Ala. R. Civ. P. See Property at 2018 Rainbow Drive, 740 So.2d at 1027 (' " '[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced.' " ' (quoting Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala. 1988), quoting in turn 6 C. Wright & A. Miller, Federal Practice & Procedure § 1542 (1971) ) ). Likewise, if, as BCSS argues, the 1991 agreement does *505 not govern sewer rates charged to the Golf Club, then the Golf Club simply will not be entitled to relief under that contract. As we concluded in BAC:
" 'If in the end the facts do not support the plaintiffs, or the law does not do so, so be it -- but this does not mean the plaintiffs cannot come into court and allege, and attempt to prove, otherwise. If they fail in this endeavor, it is not that they have a "standing" problem; it is, as Judge Pittman recognized in Sturdivant [v. BAC Home Loans Servicing, LP, 159 So.3d 15 (Ala. Civ. App. 2011),] that they have a "cause of action" problem, or more precisely in these cases, a "failure to prove one's cause of action" problem. The trial court has subject-matter jurisdiction to "hear" such "problems" -- and the cases in which they arise.'
" 159 So.3d at 46. The Associations and the Golf Club in this case may have a 'cause of action' problem; they may have a 'real-party-in-interest' problem -- we do not, of course, mean to suggest an answer. There is, however, no 'standing' problem. Accordingly, the trial court erred in entering a summary judgment based on the Associations' and the Golf Club's purported lack of standing."
Gardens at Glenlakes, 225 So.3d at 51-53 (second emphasis added; footnote omitted).
Similarly, in this case, the defendants' allegation that William's claims are an attempt "to assert the rights of a third party not named in the action" raises questions as to whether William's claims potentially suffer from a "real-party-in-interest problem" or a "cause-of-action problem," not a "standing problem." As we noted in Gardens at Glenlakes, the distinction between such "problems" is significant because the former, if they exist, do not divest a trial court of subject-matter jurisdiction, but the latter does. Of course, as in Gardens at Glenlakes, we do not suggest that William's claims do in fact suffer from a real-party-in-interest defect or a cause-of-action defect, nor do we suggest that his claims are viable. However, what is clear from Gardens at Glenlakes is that, if William's claims suffer from a defect, it is not a defect of "standing" -- a concept that this Court, since issuing BAC, has now repeatedly "cautioned ... is generally relevant only in public-law cases." Gardens at Glenlakes, 225 So.3d at 53. See, e.g., Ex parte Merrill, 264 So.3d 855, 863 n. 6 (Ala. 2018) ; Nichols v. HealthSouth Corp., [Ms. 1151071, March 23, 2018] --- So.3d ----, ---- n. 2 (Ala. 2018) ; and Ex parte Wilcox Cty. Bd. of Educ., 218 So.3d 774, 779 n.7 (Ala. 2016). See also Har-Mar Collisions, Inc. v. Scottsdale Ins. Co., 212 So.3d 892, 907 (Ala. 2016) (Murdock, J., concurring in the result) ("This is not the first time since this Court's decision in BAC that counsel in a case before this Court has presented a brief making a 'standing' argument that fails to account for our recent precedents as to the inapplicability of 'standing' to private-law actions. I encourage members of the bench and bar to be mindful of those precedents."). Thus, because the concept of standing is generally inapplicable in a private-law case such as this and because William's alleged lack of "standing" was the only ground the defendants asserted in support of a summary judgment on his declaratory-judgment, breach-of-fiduciary-duty, and conspiracy claims, the defendants failed to carry their burden of making a prima facie showing that they were entitled to a judgment as a matter of law on those claims. Dow, supra. Accordingly, the circuit court erred by entering a summary judgment in the defendants' favor on those claims. See Free v. Lasseter, 31 So.3d 85 (Ala. 2009) (holding that a summary judgment was improper where the *506 defendants failed to carry their burden as summary-judgment movants).
Of course,
"[e]ven though the trial court's reason for entering a summary judgment in favor of [the defendants] was flawed, 'we can affirm a summary judgment on any valid legal ground presented by the record, whether that ground was considered by, or even if it was rejected by, the trial court, unless due-process constraints require otherwise.' Wheeler v. George, 39 So.3d 1061, 1083 (Ala. 2009)."
Kruse v. Vanderbilt Minerals, LLC, 189 So.3d 42, 56 (Ala. 2015).
The defendants contend that the summary judgment was proper because, they say, the circuit-court action should have been abated pursuant to § 6-5-440, Ala. Code 1975, which provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
(Emphasis added.)
Thus, if a plaintiff files an action in one court of this State and then, asserting the same cause against the same party, subsequently files a second action in another court of this State, the pendency of the first-filed action is a good defense to the second-filed action. However, this Court has rejected the converse of that proposition and has held that the second-filed action is not a good defense to the first-filed action. See Clark v. Wells Fargo Bank, N.A., 24 So.3d 424 (Ala. 2009) ; and Johnson v. Brown-Service Ins. Co., 293 Ala. 549, 552, 307 So.2d 518, 520-21 (1974) ("We think the priority or order in which the suits are filed has some significance. Ordinarily, the rule is that only a prior action may be pleaded in abatement of a subsequent one, and not vice versa."). Here, the defendants argue that the circuit-court action should have been abated by the probate-court action, but the circuit-court action was the first-filed of William's two actions. As a result, the second-filed probate-court action cannot operate as a defense to the first-filed circuit-court action. Accordingly, abatement does not provide a valid legal ground upon which to affirm the summary judgment. Kruse, supra.
The defendants also argue that the summary judgment on William's declaratory-judgment claim was proper because, they say, the circuit court "lost jurisdiction" over that claim when William filed his petition commencing the probate-court proceedings. Defendants' brief, at 23. In support of their argument, the defendants contend that the probate court has "primary jurisdiction" over conservatorships, id. at 24, and that the circuit court "lacks jurisdiction ... to enter a Declaratory Judgment where the Probate Court has jurisdiction." Id. at 23. However, even if we assume, which we do not, that the defendants' contention is meritorious, William's declaratory-judgment claim does not concern a controversy regarding a conservatorship. Indeed, no conservatorship exists in this case; the probate court denied William's petition to appoint a conservator of Martha's assets. See note 4, supra; and Ex parte Casey, 88 So.3d 822, 830 (Ala. 2012) (holding that, although there had been "numerous proceedings in the probate court concerning ... the appointment of a conservator," no conservatorship had been created because the probate court had not entered an order doing so). Rather, William's declaratory-judgment claim *507 concerns a controversy regarding the defendants' alleged misconduct as Martha's agents under the POA. Accordingly, William's filing in the probate court of a petition to appoint a conservator of Martha's assets did not divest the circuit court of jurisdiction over his declaratory-judgment claim regarding the POA. See Ala. Const. 1901, § 142.
Conclusion
William has failed to demonstrate that the circuit court erred by entering a summary judgment in the defendants' favor on his "interference-with-inheritance-expectancy" and undue-influence claims. Accordingly, we affirm the summary judgment with respect to those claims. However, the circuit court erred by entering a summary judgment in the defendants' favor based on William's lack of "standing" to prosecute his declaratory-judgment, breach-of-fiduciary-duty, and conspiracy claims. Accordingly, we reverse the summary judgment with respect to those claims and remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Parker, Main, and Mendheim, JJ., concur.

Neal has not at any time been a party to these proceedings.

William filed in the circuit court a petition to remove the conservatorship proceedings from the probate court, see § 26-2-2, Ala. Code 1975, and on June 19, 2017, the circuit court entered an order to that effect. The defendants subsequently filed a motion to intervene in the conservatorship proceedings and a motion to remand the proceedings to the probate court on the basis that the circuit court lacked subject-matter jurisdiction over the conservatorship proceedings because the probate court had not acted upon William's petition for a conservator at the time the circuit court entered an order removing the proceedings from the probate court. See Rush v. Rush, 163 So.3d 362, 369 (Ala. Civ. App. 2014) ("A circuit court lacks subject-matter jurisdiction to remove a [guardianship or conservatorship] proceeding before the probate court has acted upon the petition for letters of guardianship or conservatorship."). Thereafter, the circuit court entered an order remanding the conservatorship proceedings to the probate court. See § 26-2-3, Ala. Code 1975.

The circuit court's judgment did not expressly rule on the defendants' ALAA claim. However, that fact does not affect the finality of the December 13, 2017, judgment because the circuit court implicitly denied that claim by failing to specifically reserve jurisdiction to adjudicate the claim at a later date. See Gonzalez, LLC v. DiVincenti, 844 So.2d 1196, 1202 (Ala. 2002) (concluding that a summary judgment that did not adjudicate an ALAA claim or specifically reserve jurisdiction over the claim, but that was otherwise final, was a final, appealable judgment); and Harris v. Cook, 944 So.2d 977, 981 (Ala. Civ. App. 2006) ("The Cooks' ALAA counterclaim is not a bar to the finality of the May 2002 judgment; because that judgment, which was otherwise final, did not address the outstanding ALAA claim, the claim was implicitly denied.").

Subsequent to the entry of the December 13, 2017, judgment, the probate court, following a bench trial, entered an order denying William's petition to appoint a conservator of Martha's assets. William appealed from the probate court's order, and, by separate order issued today, this Court affirms that denial. See Norvell v. Norvell, 275 So.3d 497 (Ala. 2018) (table). The issue of the effect, if any, of the probate court's order on the circuit-court proceedings is not presently before this Court, and we therefore decline to address that issue.