

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00104-CV

———————————————

IN THE ESTATE OF CLAUDE M. COOPER, JR., DECEASED

---

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2021-PR03242-2A

---

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This appeal arises from the probate court's denial of the Texas Citizens Participation Act (TCPA) motion to dismiss filed by Appellants Mary Sue Cooper Huffman and Virginia Cooper Downes (collectively, the Trustees), who are co-trustees of a testamentary trust (the Trust) in favor of their now-deceased brother, Claude Cooper, Jr. Their motion sought dismissal of the breach-of-fiduciary-duty claims filed by Claude's son, Appellee James Franklin Cooper. James's claims are based on (1) Mary Sue's withdrawing $100,000 from the Trust shortly before Claude's death, allegedly to create a trust for Claude's other child and (2) the Trustees' filing two suits for declaratory relief regarding the proper distribution of trust assets. The Trustees' motion was overruled by operation of law.

On appeal, the Trustees argue in one issue with multiple subparts that the probate court erred by denying, either in whole or in part, the Trustees' TCPA motion to dismiss James's claims. From the record before this court, the TCPA applies to James's claims against the Trustees, James did not produce prima facie evidence for most of his claims but did produce prima facie evidence of one of the claims, and the Trustees negated as a matter of law the claims against Virginia and all but one claim against Mary Sue. Accordingly, we reverse the trial court's denial of the TCPA motion as to all claims against Virginia and all but one claim against Mary Sue, but we affirm the trial court's denial of the motion as to the claim against Mary Sue based on her withdrawing $100,000 from the Trust.

2

## I. The Trust

The Trust was created in the will of Ruth Messer Cooper, a lifelong resident of Alabama. The will divided Ruth's assets among her three children: Mary Sue, Virginia, and Claude. Claude's share was placed in the Trust, and Mary Sue and Virginia were named as trustees. Ruth's will gave Claude the power to appoint in his will who would receive the Trust's assets upon his death. The will further provided that if Claude did not exercise the power of appointment, the Trustees were to distribute the Trust's assets per stirpes to Claude's descendants. At the time of his death, Claude had two children: James and his sister Rachel.

## II. Claude's Will and Death

Claude executed a will in 2019. The will left nothing to Rachel but did not expressly mention the Trust. Claude died on August 21, 2021. Rachel was present at his death, but James was not.

According to Mary Sue, shortly before Claude's death, she asked him if he wanted to "do something for Rachel," and Claude said yes. Mary Sue then withdrew $100,000 from the Trust and placed it in a bank account "with the expectation that [she] would work out the details of a trust for Rachel."

Claude's funeral was held on September 18. On September 20, James sent Mary Sue an email in which he thanked her for putting together the memorial service for his father and asked her to respond to an attached email, which his attorney had sent him

ten days before, regarding the withdrawn funds.[1] The attorney's email stated that Mary Sue had "stole[n] from [Claude's] assets" and would be held civilly and criminally liable:

> I find it most disturbing that you mentioned that [Mary] Sue removed $100,000.00 from the trust account for the benefit of Rachel. First of all, the trust for your father was set up to provide for your father during his lifetime, the trust assets belonged to your father only. The trust did not list you or your sister as beneficiaries. If [Mary] Sue did remove money from the trust, she is in violation of the Texas Trust Code and will be held liable. If [Mary] Sue removed money from the estate after your father's death, she is also liable under the Texas Probate Code. The money must be placed back into the trust account, or the Judge could order a bench warrant for your aunt's arrest, either way you look at it, [Mary] Sue stole from your father's assets.
>
> [Mary] Sue is in violation of her fiduciary duty to your father and the penalty could be severe. [Mary] Sue can be prosecuted both civilly and criminally since she is a Trustee.
>
> Remember, your father disinherited his daughter in his Will and he never revoked his Will.
>
> Please forward this email to [Mary] Sue or have her attorney contact me. [Emphases added.]

The Trustees' attorney in Alabama sent a letter to James's attorney responding to the email. The letter stated that the funds had been returned to the Trust, with interest, and it enclosed the August and September financial statements for the Trust. The letter further stated that the Trustees' attorney and their Texas counsel had reviewed Claude's will and did not believe that it exercised the power of appointment,

---

[1]James's brief states that his demand for the money's return occurred before Claude's death, but the record does not support this assertion.

and consequently, the Trustees were proposing a distribution plan. *See* Ala. Code § 19-3B-817(a). Under that plan, the Trustees would distribute half of the Trust's assets to James and Rachel before December 2021 and would hold the remainder in the trust account until filing the Trust's final income tax return and paying all trust expenses. *See id.* § 19-3B-817(b). They also asked James and Rachel to sign a release waiving a formal accounting and releasing the Trustees from liability regarding the Trust's management.[2] After receiving the release, the Trustees planned to distribute the remainder of the Trust's assets after paying expenses and filing the Trust's tax returns.

James's attorney responded with a letter that the Trustees' attorney interpreted as an objection to the distribution plan. The attorneys exchanged letters disagreeing about whether Claude had exercised a power of appointment in his will and whether the Trust's assets belonged to Claude's estate.

## III. The Trustees' Litigation

After James filed an application to probate Claude's will, the Trustees filed a plea in intervention. In their plea, they asked the trial court for two declarations: (1) Claude had not exercised the power of appointment over the Trust and (2) because Claude did not exercise the power of appointment, the assets in the Trust must be distributed per stirpes. They also requested attorney's fees.

---

[2]Such a release would not release a trustee from liability for a breach of duty if at the time of its signing, the beneficiary "did not know of the material facts relating to the alleged breach and the trustee had actual knowledge of the facts relating to the alleged breach." *See* Ala. Code § 19-3B-1009.

5

After severing the Trustees' claims into a separate proceeding, the probate court granted partial summary judgment for the Trustees, declaring that Claude had not exercised in his will the testamentary power of appointment granted to him in Ruth's will. The trial court denied summary judgment on the Trustees' second requested declaration that the Trust's assets should be distributed per stirpes. The Trustees then nonsuited their second request for declaratory relief. Ten days after the Trustees nonsuited their second request, James filed a "Plea in Interevetion [sic] for Declaratory Relief and Request for Temporary Unjunction [sic]," requesting a declaratory judgment that the Trust had been terminated. Despite the trial court's partial summary judgment, James also requested a declaration that Claude's will had left the Trust's assets to James.

A few days later, the Trustees filed a petition for declaratory judgment in Alabama. In that Alabama suit, the Trustees asked the Alabama trial court to determine the proper distribution of the Trust's assets. They further asked the Alabama trial court to declare that the Trustees had not breached their fiduciary duties by filing their declaratory judgment actions and by Mary Sue's withdrawal of funds.

The Trustees then moved for final judgment in their Texas suit, which the trial court granted in part. The trial court's interlocutory judgment incorporated its previous summary judgment order declaring that Claude's will had not exercised the power of appointment regarding the Trust, and it awarded the Trustees attorney's fees.

6

## IV. James's Suit

Ten days after the trial court signed its interlocutory judgment, James filed counterclaims in the Trustees' Texas suit for breach of fiduciary duty against the Trustees.[3] James alleged that because of the $100,000 withdrawal from the Trust, he had been damaged by "thousands of dollars of fees" as well as "losses on the assets [that the Trustees had] sold to remove the funds." James further alleged that the Trustees' "theft" caused a conflict of interest such that when Claude died, the only "possible legitimate course of action to take assuming for the sake of argument that they are not completely disingenuous about the alleged conflict in the interpretation of Ruth and Claude's Wills" was "to provide James with half of the [T]rust proceeds," to "interplead the other half of the funds into the registry of the Court," and "to note that because of the complete conflict with them attempting to mitigate their past deeds, they can take no further role with regard to the half of the money that it could be argued [Rachel] had an interest in."

James further contended that the Trustees had brought their declaratory judgment action to hide their withdrawal of funds and to withhold his share of the trust from him "in order to obtain litigation costs leverage over him." He alleged that the Trustees had "improperly requested that [the Alabama trial court] give them another shot at" the declaratory relief that they had nonsuited in the Texas

[3]The record does not reflect the status of the Alabama suit involving the same issues.

7

proceeding. He claimed that he had suffered damages by the Trustees selling the Trust's assets at a net loss and by "[l]ocking [him] into [s]tock losses he otherwise would not have incurred, by refusing to turn over ANY of his trust to him."

The Trustees filed a TCPA motion to dismiss James's counterclaims, asserting that James's breach-of-fiduciary-duty claims arose from their exercise of their right to petition—specifically, their requests for declaratory relief in the probate court and in the separate petition that they had filed in Alabama. The Trustees attached exhibits to their motion, including a copy of Ruth's will; a copy of Claude's will; the Alabama petition; the email from James's attorney that James had forwarded to Mary Sue shortly after Claude's funeral; and letters between the Trustees' attorney and James's attorney showing their disagreement over whether Claude's will had included or needed to include a power of appointment. They also attached Mary Sue's affidavit in which she stated that she had withdrawn the $100,000 after Claude had said he wanted to do something for Rachel and after Mary Sue had "spoke[n] with James about it, and James said that he was okay with putting $100,000 in a trust for Rachel if James could be the trustee."

James filed a response to the TCPA motion. He asserted that the day before Claude died, the Trustees had "essentially stole[n] $100,000 from the [T]rust to give to one of their daughters to hold in trust for someone who indisputably had absolutely no right to the [sic] any of [the] funds, or any benefit from them, let alone to the completely mystifying sum of exactly $100,000." He further alleged that "the Trustees'

8

actions have continued to lock [James] into equities in the Trust which are currently suffering heavy losses at a time at which [James], considering his proximity to retirement, would prefer to be more risk adverse." Although he claimed that he had pled five separate breaches of fiduciary duty against the Trustees, his claims complained of only three acts by the Trustees—(1) the withdrawal of money from the Trust, (2) the Trustees' pursuing declaratory relief in Texas rather than immediately turning over at least half of the Trust's assets to him, and (3) the Trustees pursuing declaratory relief in Alabama.

James attached three exhibits to his response: a copy of the trial court's partial summary judgment order; the October 2021 letter from the Trustees' Alabama counsel stating that the $100,000 plus interest had been returned to the Trust and proposing a plan of distribution; and three pages from one of the Trust's account statements. The partial account statement revealed that in mid-August 2021, some of the securities held by the Trust had been sold, generating a little over $100,000, less fees incurred for the sales. One of the statement pages contained a handwritten note stating, "Cost Basic [sic] (Purchase Price) – Sale Amount = Loss: $63,911.37." This referred to an entry on the statement regarding one of the securities that had been sold; the statement listed the sale amount as $24,200.38 and the cost basis as $88,111.75. The Trustees filed a reply asserting that all James's claims, as pled, were predicated on the Trustees' exercise of their right to petition for declaratory relief.

9

The trial court signed an order granting the TCPA motion in part, dismissing all the claims against Virginia and the claims against Mary Sue that arose from the Trustees' filing suits in Texas and Alabama, and ordering that the Trustees and James submit attorney's fees evidence. The same day, the trial court signed another order denying the TCPA motion in part and stating that the only breach-of-fiduciary-duty claim remaining was the claim against Mary Sue regarding the withdrawal of funds, and "[a]ll other claims [were] dismissed per [the] contemporaneous order." However, these orders were not signed until April 3, 2023. The trial court had held the TCPA hearing on February 28, 2023, and as a result, the TCPA motion had already been overruled by operation of law on March 30, 2023. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(a), 27.008(a). The Trustees filed this appeal from the denial of their motion.

### Standard of Review and Burden of Proof

This court reviews a ruling on a TCPA motion to dismiss de novo. *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied). The party moving for dismissal under the TCPA has the initial burden to demonstrate that the legal action to be dismissed "is based on or is in response to: (1) the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by [Texas Civil Practice and Remedies Code] Section 27.010(b)." Tex. Civ. Prac. & Rem. Code Ann. § 27.005.

If the TCPA movant satisfies the burden to show the TCPA's applicability, the opposing party may resist dismissal by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Even when the opposing party establishes a prima facie case, however, the TCPA movant will still be entitled to dismissal if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

In determining whether a legal action should be dismissed under the TCPA, the trial court must consider evidence that a court could consider under Texas Civil Procedure Rule 166a and "supporting and opposing affidavits stating the facts on which the liability or defense is based." *See id.* § 27.006(a); *Stickland v. Schlegel*, No. 02-22-00281-CV, 2023 WL 8112889, at *19 (Tex. App.—Fort Worth Nov. 22, 2023, no pet.) (mem. op.). The court must also consider the pleadings, but pleadings "are not a substitute for clear and specific evidence of 'each essential element of the claim in question.'" *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 n.13 (Tex. 2023) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)).

## Discussion

### I. Standing and Capacity

As an initial matter, we address the Trustees' contention that James lacks standing to sue them for breach of fiduciary duty. They argue that James cannot complain about any Trust transactions that occurred before Claude died because

11

before that time James was only a "potential future beneficiary" of the Trust and thus did not have an enforceable interest in the trust. That is, although they acknowledge that he alleged that he suffered damages as a result of the Trustees' conduct, they contend that he does not have the right to sue in his individual capacity about anything that happened while his interest in the Trust was contingent. They further contend that he does not have standing to sue as Claude's executor because has not alleged any damages in that capacity. They raised this same complaint in the trial court.

We disagree. We first observe that the Trustees do not appear to challenge James's standing in "the 'proper, jurisdictional sense,'" which requires the plaintiff to allege a concrete, particularized injury in fact. *See Herbig, Tr. of Welch Fam. Tr. C v. Welch, Tr. of Welch Manry Fam. Tr.*, No. 01-22-00080-CV, 2023 WL 4188074, at *4 (Tex. App.—Houston [1st Dist.] June 27, 2023, no pet.) (quoting *Berry v. Berry*, 646 S.W.3d 516, 527 (Tex. 2022)); *see also Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) (setting out requirements of standing doctrine). To the extent that the Trustees do challenge James's standing, we are unpersuaded. The Trustees acknowledge that James has claimed that Mary Sue's withdrawal reduced the value of the Trust's assets, and there is no dispute that he has an interest in at least some of those assets or that he had that interest at the time that he filed his breach-of-fiduciary-duty claims.

As we discuss below, Alabama law applies to the Trust's administration. Under Alabama law, the Trustees' complaint goes to capacity rather than standing. *See Daily v. Esser*, Nos. SC-2022-0672, SC-2022-0673, SC-2022-0992, 2023 WL 6324888, at *19–20 (Ala. Sept. 29, 2023) (discussing arguments that purported to challenge standing that in actuality related to other doctrines, such as capacity, that do not implicate the subject-matter jurisdiction of a trial court); *see also Ex parte Skelton*, 275 So. 3d 144, 151 (Ala. 2018) (stating that the "doctrine of standing (particularly as a jurisdictional concept) has no application in this private-law case"); *Norvell v. Norvell*, 275 So. 3d 497, 503–05 (Ala. 2018) (stating that question of whether plaintiff was the correct person to bring his claims was "a real-party-in-interest problem" rather than a standing problem). Our conclusion is the same applying Texas law. *See Herbig*, 2023 WL 4188074, at *4 (determining the argument raised by the trustee in that case—that the plaintiff did not have standing to seek a declaratory judgment regarding a trust—was a matter of capacity, not of standing); *see also Berry*, 646 S.W.3d at 527 (noting that resolving question of whether unnamed trust beneficiary was within class of persons statutorily authorized to sue trustees for breach of duty "may overlap with, but does not necessarily implicate, questions of standing bearing on subject-matter jurisdiction"). Although the question of James's capacity to sue may overlap with questions of standing, the arguments asserted by the Trustees do not implicate "questions of standing bearing on subject-matter jurisdiction." *See Berry*, 646 S.W.3d at 527.

As for the question of capacity, we conclude that James is within the class of persons authorized to sue the Trustees. First, we reject the assertion that a trustee can never be sued by a contingent beneficiary. Alabama law provides remedies to beneficiaries affected by a trustee's breach of duty, *see* Ala. Code §§ 19-3B-1001, 19-3B-1002, and the term "beneficiary" includes anyone who "has a present *or* future beneficial interest in a trust, vested *or* contingent," *id.* § 19-3B-103 (emphasis added). Texas also allows a contingent or vested beneficiary to sue a trustee for breach of fiduciary duty. *See* Tex. Prop. Code Ann. §§ 111.004 (defining "beneficiary" and "interested person"), 115.011(a) (authorizing any "interested person" to bring suit relating to trust administration); *Berry*, 646 S.W.3d at 527–28 (applying Texas Property Code Sections 111.004, 115.001, and 115.011 in analysis of whether contingent trust beneficiary was authorized by statute to bring her breach-of-fiduciary-duty claims and concluding that she was). Even at the time that Mary Sue transferred the money, James had a contingent interest in the Trust subject only to Claude's power of appointment. *See Berry*, 646 S.W.3d at 529. Second, and more importantly, in this case regardless of whether the applicable laws or the terms of the Trust would have restricted James's ability to sue the Trustees while Claude was alive, by the time that he did sue, his interest was no longer contingent. James now unquestionably has a right to at least a share of the Trust's assets, and he contends that Mary Sue's improper action reduced those assets. Accordingly, James was within the class of

14

persons authorized to bring his claims. *See* Ala. Code §§ 19-3B-101, 19-3B-1001–02; Tex. Prop. Code Ann. §§ 111.004, 115.011(a); *Berry*, 646 S.W.3d at 527.

Although the Trustees cite Alabama law throughout their brief, they do not discuss Alabama law on the question of standing or capacity. The two Texas cases relied on by the Trustees pre-date *Berry*, do not mention Section 115.011 of the Texas Property Code, and are factually distinguishable. *See Moody v. Moody*, 613 S.W.3d 707, 719 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (addressing whether an heir may sue to recover property belonging to an estate when the estate's personal representative had declined to bring suit, and not discussing whether a trust's beneficiary may sue a trustee for acts taken while the beneficiary's interest was contingent); *Davis v. Davis*, 734 S.W.2d 707, 709 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (involving suit by a person who was not named as a beneficiary of a trust of which his children were beneficiaries and who would have an interest in the trust only if one of his children died intestate).

In their reply brief, the Trustees argue that Section 115.011 does not authorize James to bring his suit because although that provision allows an "interested person" such as a beneficiary to bring claims under Section 115.001, a claim under Section 115.001 does not include tort claims, and thus Section 115.011 does not authorize James to sue for breach of fiduciary duty. The Trustees do not, however, discuss *Berry*, in which the Texas Supreme Court applied Sections 115.001 and 115.011 in its analysis of whether a contingent trust beneficiary was within the class of persons

15

authorized to sue the trustee for breach of fiduciary duty. *Berry*, 646 S.W.3d at 527–30. We therefore disagree that those Property Code sections have no relevance to an analysis of who may sue a trustee for breach of fiduciary duty. Thus, even applying Texas law, we conclude that James was authorized to bring his breach-of-fiduciary-duty claims. We reject the Trustees' challenge to James's standing and capacity.

## II. Step One: The TCPA's Applicability

We begin our TCPA analysis by looking at whether the Trustees established the TCPA's applicability. "Under the TCPA, the filing of a petition in a lawsuit is a communication in or pertaining to a judicial proceeding that implicates a party's exercise of the right to petition." *Cass v. Hughes as Tr. of Jimmy Celtyn Hughes QTIP Marital Tr.*, No. 02-23-00122-CV, 2023 WL 6300593, at *5 (Tex. App.—Fort Worth Sept. 28, 2023, pet. denied) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1), (4)). James's petition alleged that the Trustees had breached their fiduciary duty by filing the declaratory judgment actions in Texas and Alabama, and those claims are therefore based on or are in response to the Trustees' exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001, 27.003. Thus, the TCPA applies to those claims.

Likewise, James's claims based on the withdrawal of $100,000 are, as pled, also based on or in response to the Trustees' exercise of the right to petition. James filed his breach-of-fiduciary-duty claims only after the Trustees filed their Alabama petition seeking a declaration regarding their performance of their duties. Further, as the

16

Trustees point out, "In each of the substantive paragraphs of James's pleadings that mention the $100,000 withdrawal, James explicitly ties his breach of fiduciary duty claim back to the fact that the Co-Trustees . . . [sought] declaratory relief." For example, James pled that the Trustees filed the declaratory proceedings to hide the withdrawal, alleging that the Trustees had filed suit because "IF [the Trustees] could convince the eventual trier of fact that [Rachel] was going to get half of the [T]rust, they could certainly mitigate [their withdrawal] as simply being a 'premature distribution.'" He further alleged that the Trustees intentionally filed suit without first disbursing half of the Trust's assets to him in order to "obtain litigation costs leverage over him" and thereby "mitigat[e] their theft." In other words, according to James's petition, the Trustees' filing suit was a continuation of and cover-up of the theft. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that the plaintiff's petition is the best evidence of the nature of the plaintiff's action); *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *4 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (stating that TCPA movant had shown TCPA's applicability by showing that the claims against it were factually predicated on conduct that fell within TCPA's scope). The TCPA therefore applies to the claims against the Trustees based on the theft. Having held that the TCPA applies to all of James's claims, we proceed to the next step of the analysis.

17

**III. Step Two: Prima Facie Case**

Because the Trustees established that James's claims are based on their assertion of the right to petition, we proceed to the second step of the analysis and determine whether James established a prima facie case by clear and convincing evidence.

To determine whether James made a prima facie case for his claims, we must first determine what law applies to the claims. Texas law governs the construction of Claude's will. *See Van Hoose v. Moore*, 441 S.W.2d 597, 617 (Tex. App.—Amarillo 1969, writ ref'd n.r.e.). As for the Trust, the limited appellate record before this court indicates that Ruth had lived in Alabama all her life and that the Trustees lived in Alabama and managed the Trust from there, and there is no indication that Ruth owned any real property in Texas or that any Trust property is located in Texas. Accordingly, Alabama law governs Ruth's will and the Trust's administration. *See Crossland v. Dunham*, 140 S.W.2d 1095, 1096 (Tex. 1940); *Lanius v. Fletcher*, 101 S.W. 1076, 1077 (Tex. 1907); *Wilson v. Smith*, 373 S.W.2d 514, 517 (Tex. App.—San Antonio 1963, writ ref'd n.r.e.); *see also* Ala. Code § 19-3B-108(g); *Hoglan v. Moore*, 122 So. 824, 828 (Ala. 1929). However, as noted throughout this opinion, on the matters discussed herein, Alabama law appears to be substantially the same as Texas law.

Under Alabama law, like Texas law, a breach-of-fiduciary-duty claim requires proof of "(1) the existence of a fiduciary duty between the parties; (2) the breach of

18

that duty; and (3) damages suffered as a result of the breach." *Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012); *cf. Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (setting out similar elements for breach of fiduciary duty under Texas law). As for the existence of a duty, Alabama law requires a trustee to "administer the trust solely in the interests of the beneficiaries." Ala. Code § 19-3B-802; *see also Regions Bank*, 101 So. 3d at 219 ("A trustee owes the beneficiaries of a trust the duty of loyalty, which requires the trustee to preserve trust assets and to administer the trust solely in the interest of the beneficiaries."); *cf. Peek v. Mayfield*, No. 02-22-00492-CV, 2023 WL 5967886, at \*9 (Tex. App.—Fort Worth Sept. 14, 2023, pet. denied) (mem. op.) (noting trustee's duty of good faith, fair dealing, loyalty, and fidelity to the trust's beneficiaries). In this case, the trust instrument—Ruth's will—required the Trustees to hold and administer trust property for Claude's benefit.

James alleged a breach of this duty by alleging that the Trustees had stolen trust funds before Claude's death, and James's TCPA response established a prima facie case that the Trustees had breached their duty to preserve trust assets and administer the Trust solely for Claude's benefit. James attached to his TCPA response a statement from a trust account showing the withdrawal of funds, thus confirming that shortly before Claude's death, a little more than $100,000 had been withdrawn from the account. He also attached a letter to his attorney from the Trustees' attorneys acknowledging that the funds had been withdrawn "for the benefit of Rachel." The letter claimed that the withdrawal had been "to fulfill Claude's wishes," but it

19

provided no more specific information about Claude's alleged wishes or how the attorneys drafting the letter had any knowledge of those wishes. That is, the letter acknowledged a withdrawal of funds, did not provide enough facts to show how the withdrawal was for Claude's benefit, and stated that the withdrawal was for the benefit of someone other than Claude.

As for damages, at the least, the partial account statement attached to James's TCPA response showed that the Trust had incurred "[c]ommissions/[t]rading fees" of $1,378.70 when Trust securities were sold to raise the $100,000. Accordingly, for James's breach of duty claim predicated on the withdrawal of funds, he presented a prima facie case of the claim. *See* Ala. Code § 19-3B-1002 (providing that a trustee who commits a breach of trust is liable to beneficiaries for the greater of "(i) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or (ii) the profit the trustee made by reason of the breach").

In their reply brief, the Trustees argue that the partial account statement was insufficient to show that the trading fees shown in the statement arose from Mary Sue's actions, and they point out that the Trust instrument authorized them to sell securities and to employ and pay for investment advisors. However, the partial account statement showed that the fees were incurred in sales of securities in mid-August 2021—less than a week before Claude died—and that those sales generated $107,914.16, less the fees. The Trustees' TCPA motion acknowledged that Mary Sue

20

had spoken to Claude about doing something for Rachel "[s]hortly before he passed away" on August 20, 2021 and that she withdrew the funds after that conversation. This partial account statement was sufficient to make a prima facie case that the fees were incurred because securities held by the Trust were sold to generate the $100,000 for Rachel. The Trustees produced no controverting evidence establishing that the fees had been generated from unrelated sales. Thus, if Mary Sue's selling of securities to fund a trust for Rachel was a breach of Mary Sue's fiduciary duty, then the trading fees are damages resulting from that breach. In summary, James produced a prima facie case that Mary Sue's withdrawal of funds for Rachel was a breach of the duty that a trustee owes to trust beneficiaries and that this breach resulted in damages.

As for James's claim that the Trustees' mere filing of their declaratory judgment actions constituted a breach of their duty, he did not support that claim with clear and specific evidence. The Trustees had a duty to wind up the Trust and distribute its assets to its beneficiaries upon the Trust's termination, *see id.* § 19-3B-817(b), but first they had to determine who those beneficiaries were. Because they believed that Claude's will did not exercise his power of appointment while James believed that it did, the Trustees sought a judicial declaration of the Trust's beneficiaries. Texas provides a procedure for a trustee to obtain declaratory relief related to a will or trust:

> A person interested as or through an executor or administrator, including . . . a trustee . . . may have a declaration of rights or legal relations in respect to the trust or estate:

21

(1) to ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

(2) to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity;

(3) to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings; or

(4) to determine rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.

Tex. Civ. Prac. & Rem. Code Ann. § 37.005. Alabama has a similar statute. *See* Ala. Code § 6-6-225; *see also id.* §§ 19-3B-201(c) ("A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights."), 19-3B-816(a)(26) (providing that even after a trust's termination, a trustee retains the powers appropriate for winding up the administration of the trust and distributing the trust property to the persons entitled to it).[4]

---

[4]Although Alabama substantive law applies to the Trust's administration, other Texas courts have said that Texas's Declaratory Judgments Act is procedural in nature and therefore applies to Texas suits even when applying the substantive law of another state. *See, e.g.*, *Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 353 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *cf. Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (noting that Texas's Declaratory Judgment Act is "merely a procedural device for deciding cases already within a court's jurisdiction"). For purposes of our discussion, it does not matter which state's declaratory judgment act applies to the Texas suit because either way, the Trustees were authorized to bring their suit.

Thus, the Trustees were authorized by statute to bring their Texas and Alabama suits to resolve a dispute with James over, among other issues, whether Claude's will included a power of appointment and whether, under the Trust instrument, the Trust's assets should be distributed per stirpes. Further, although James contends that the Trustees' declaratory judgment actions were "completely unnecessary," his petition acknowledged that Ruth's will contained two terms that he viewed as conflicting with respect to the power of appointment issue; that he and the Trustees disagreed about the proper construction of Ruth's will, Claude's will, and the administration of the Trust, including how the Trustees should wind up the Trust; and that the disagreement existed before the Trustees filed suit and continued after. Further, several days before the Trustees filed their Alabama suit, James filed his own claim for declaratory relief regarding the proper disposition of the Trust's assets, thereby recognizing that a dispute existed among the parties about the proper construction of Claude's will and who the Trust's beneficiaries were.

James argued in his petition that if the Trustees truly believed that a declaratory judgment action was necessary, they should have immediately provided him with half of the Trust's assets and interpled the other half of the funds "so that any contesting parties could, if necessary, bring a cause of action to interpret [Ruth's] Will." He contended that by not following that course of action, they breached their fiduciary duty. But bringing suit for declarations related to Ruth's and Claude's wills is exactly what the Trustees did, and James's argument about giving him half of the Trust's

23

assets upfront ignores the fact that if the Trustees succeeded in their action, they could be awarded attorney's fees. *See* Ala. Code §§ 6-6-231, 19-3B-709; *MacKenzie v. First Ala. Bank*, 598 So. 2d 1367, 1371 (Ala. 1992) (stating that the trial court's authority to render a declaratory judgment under Section 6-6-225 included the authority under Section 6-6-231 "to 'make such award of costs as may seem equitable and just,'" including an award of attorney's fees for the trustee to be paid from the trust); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; Tex. Prop. Code Ann. § 114.064; *see also Boyce v. Boyce*, Nos. 01-21-00166-CV, 01-21-00477-CV, 2022 WL 17419376, at *15 (Tex. App.—Houston [1st Dist.] Dec. 6, 2022, pet. denied) (mem. op.) (noting that Texas's Trust Code and Texas's Declaratory Judgments Act both authorize the award of attorney's fees). *Cf. In re McIntire*, No. 07-22-00249-CV, 2023 WL 113059, at *2 (Tex. App.—Amarillo Jan. 5, 2023, orig. proceeding) (mem. op.) (holding that trial court did not abuse its discretion by not ordering trustee to deposit the trust corpus into the registry of the trial court pending trial of beneficiaries' claims against trustee). Further, even when a trust terminates, a trustee of an Alabama trust has the right "to retain a reasonable reserve for the payment of debts, expenses, and taxes." Ala. Code § 19-3B-817. James's plan of action would have resulted in the Trustees retaining a reserve solely from the half of the Trust's assets that is potentially Rachel's share.

James further argued that the reason that the Trustees did not turn over half the funds to him right away was to prevent him from having enough money to mount

24

a legal defense. However, James's own petition made clear that before the Trustees filed suit, he and they had disagreed about and retained legal counsel to discuss the proper disposition of trust property. Additionally, James provided no evidence that the actual purpose of the Trustees' litigation was to prevent him from successfully pursing a breach-of-fiduciary-duty claim based on the withdrawal.

In his brief, James proposes a hypothetical situation in which Rachel has died and has no children, and he then asserts that the Trustees "have provided NO evidence that [these hypothetical facts] are not true." James argues that, if this hypothetical were true, then the Trustees would have "created a controversy where none existed." However, if James wanted to rely on a set of facts to show that the Trustees' declaratory judgment actions were unnecessary, then he had the burden to produce evidence of those facts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The Trustees did not have the burden to negate every possible scenario under which their litigation would have been unnecessary.

James did not establish a prima facie case that the Trustees breached their duty by pursuing statutorily authorized relief to resolve the parties' dispute. The trial court therefore abused its discretion by failing to dismiss the claims against them based on their pursuing the two declaratory judgment suits.

## IV. Step Three: The Trustees' Defenses

Because James established a prima facie case for the claim against the Trustees based on the withdrawal, we review the record to see if they established as a matter of

25

law an affirmative defense or some other ground on which they are entitled to judgment. *See id.* § 27.005(d).

Regarding Virginia, the Trustees negated her liability. Their motion included Mary Sue's affidavit in which she stated that she withdrew the funds after Claude and James approved the withdrawal:

> After Claude's health began to deteriorate, I asked Claude if he wanted to do something for Rachel. Claude said, "Yes." I spoke with James about it, and James said that he was okay with putting $100,000 in a trust for Rachel if James could be the trustee. I removed $100,000 from Claude's trust and placed it in an account at the State Employees Credit Union with the expectation that I would work out the details of a trust for Rachel. I withdrew the funds from Claude's trust and placed them in the SECU account before Claude's death.

This evidence established that it was Mary Sue who solely was responsible for the withdrawal. James, on the other hand, provided no evidence that Virginia had anything to do with the withdrawal.

On appeal, James does not assert that he produced evidence of Virginia's participation in the withdrawal, but he argues that Virginia breached her fiduciary duty by negligently not noticing Mary Sue's action. However, he did not allege in his petition that Virginia had been negligent in not noticing or mitigating Mary Sue's actions or in any other manner. Rather, he repeatedly alleged that both Trustees had withdrawn the money and had thereby committed theft.[5] Even in his TCPA response,

---

[5]James asserted in the trial court and asserts in his brief that the money had been paid to the daughter of one of the Trustees. However, James did not specify

26

he acknowledged that the Trustees had claimed that only Mary Sue had been involved, and he asserted that Virginia was a co-conspirator in attempting to "mitigate the damages" from Mary Sue's withdrawal, but he did not allege that Virginia had been negligent, and he produced no evidence of Virginia's participation.

Mary Sue swore in her affidavit that she had been responsible for the withdrawal, and James produced no evidence to the contrary. Accordingly, the trial court abused its discretion by denying the TCPA motion regarding any claim against Virginia based on the withdrawal.

Mary Sue contends that the trial court should have dismissed the claims against her as well because she withdrew the money with Claude's (and for that matter, James's) permission. We will assume for purposes of this opinion that withdrawing funds from the Trust at Claude's request to "do something" for Rachel would qualify as an act done for Claude's benefit.[6] Nevertheless, Mary Sue's affidavit was not sufficient to establish as a matter of law that she did not breach her duty by her action.

which Trustee or identify the daughter, and nothing in the record supports this assertion.

[6]The Trustees argue that the Trust's terms gave them the authority to sell securities, to acquire property that may not be a proper investment under the law, and to invade the Trust corpus for Claude's benefit. James has not argued that the Trustees could not have sold the securities, even at a loss, if they did so for Claude's benefit.

A TCPA movant may establish a defense through affidavit testimony. *Id.* § 27.006 (stating that a court ruling on a TCPA motion may consider affidavits and other evidence that a court could consider under Texas Rule of Civil Procedure 166a). However, to prove facts through an interested witness such as Mary Sue, the testimony must be "uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted." *See Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.). The phrase "'could have been readily controverted' does not simply mean that the movant's summary judgment proof could have been easily and conveniently rebutted. Rather, it means that testimony at issue is of a nature which can be effectively countered by opposing evidence." *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). "[I]f the non-movant must, in all likelihood, come forth with independent evidence to prevail, then summary judgment may well be proper in the absence of such controverting proof," but "[i]f the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate." *Id.*

The Trustees had the burden to prove that the withdrawal was not a breach of Mary Sue's duty. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *see also First Ala. Bank of Montgomery, N.A. v. Martin*, 425 So. 2d 415, 424 (Ala. 1982) (stating that as party asserting defense of acquiescence, ratification, or equitable estoppel, the trustee defendant had the burden of proving the defense). Mary Sue's affidavit gives no

indication that anyone else was present for her conversation with Claude during which he said that he wanted to do something for Rachel, which means that only Mary Sue can testify about the conversation with Claude. Thus, Mary Sue's credibility "is likely to be a dispositive factor in the resolution of the case." *See Casso*, 776 S.W.2d at 558. Although Mary Sue's testimony could be sufficient at trial to establish that Claude agreed to the withdrawal, given the circumstances, granting the TCPA motion based on Mary Sue's affidavit alone would be inappropriate. *See id.*

Of course, even if Mary Sue were not acting for Claude's benefit and did breach her duty, under Alabama law, a trustee is not liable for a breach of duty to a beneficiary if the beneficiary consents to the transaction. Ala. Code § 19-3B-1009. However, that exception does not apply if "at the time of the consent . . . the beneficiary did not know of the material facts relating to the alleged breach and the trustee had actual knowledge of the facts relating to the alleged breach." *Id.* Even if Mary Sue's affidavit could be readily controverted, Mary Sue's affidavit is too short on details about Claude and Mary Sue's conversation to establish as a matter of law that Claude knew all the material facts related to Mary Sue's plan to establish a trust for Rachel funded by $100,000 from the Trust or that Claude had given Mary Sue carte blanche to decide what the "something" done for Rachel should be.[7]

---

[7]Texas law likewise authorizes a trust beneficiary to release a trustee from a duty or liability if the beneficiary is acting on full information. Tex. Prop. Code Ann. § 114.005; *Austin Tr. Co. as Tr. of Bob & Elizabeth Lanier Descendants Trs. for Robert Clayton Lanier, Jr. v. Houren*, 664 S.W.3d 35, 47, 50, 53 (Tex. 2023) (citing Trust Code

Mary Sue also stated in her affidavit that she talked to James about the withdrawal and that he consented to the withdrawal, and unlike her affidavit statements regarding Claude's consent, this assertion is one that is capable of being controverted by James. However, Mary Sue's affidavit does not establish James's consent as a matter of law. Although the affidavit stated that James consented to her withdrawing $100,000 for Rachel, it does not provide enough details to establish that James knew all the material facts that Mary Sue knew of her plan or that he agreed to leave the details to her discretion. Thus, even if James cannot succeed on a claim for a breach of a duty because James consented to that breach, the affidavit is insufficient to establish his consent as a matter of law. *See id.*; *see also* Tex. Prop. Code Ann. § 114.005. The Trustees provided no other evidence establishing James's consent as a matter of law.

Additionally, the Trustees did not negate the existence of damages. The evidence is undisputed that Mary Sue returned $100,000, plus interest, to the Trust account. However, James's evidence established a prima facie case that $1,378.70 in trading fees were incurred in raising the $100,000, and the Trustees produced no evidence that Mary Sue had deposited $1,378.70 to make up for those trading fees. If Mary Sue's actions constituted a breach of duty, then the assessment of those trading

and noting that a beneficiary may not hold a trustee liable for the consequences of the trustee's breach of duty when the beneficiary consented to the act with full knowledge of all the material facts that the trustee knew, i.e., when the beneficiary is informed enough to understand the nature and consequences of what he or she is releasing).

30

fees were a direct result of that breach, and consequently, the Trustees did not establish as a matter of law that Mary Sue's alleged breach of fiduciary duty had not caused any damages. Accordingly, the trial court did not abuse its discretion by denying the TCPA motion as to the claim that Mary Sue breached her fiduciary duty by withdrawing money from the Trust for Rachel.

The Trustees did not negate as a matter of law the breach-of-fiduciary-duty claim against Mary Sue relating to the withdrawal of funds. Accordingly, the trial court did not abuse its discretion by not dismissing that claim against her.

## V. Attorney's Fees

In his appellee's brief, James argues that attorney's fees for the Trustees "should never be considered by this Court or the Trial Court" because any attorney's fees incurred by the Trustees were "neither reasonable nor necessary." However, we have held that the trial court should have granted the Trustees' TCPA motion as to all of James's claims except the claim against Mary Sue based on her $100,000 withdrawal, and an award of reasonable attorney's fees and costs incurred in defending against a legal action is mandatory when a court orders dismissal of the legal action under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). We therefore reject James's argument that the trial court cannot consider attorney's fees on remand.

## Conclusion

Having sustained in part and overruled in part the Trustees' sole issue, we dismiss all of James's claims against Virginia and all of his claims against Mary Sue except for the breach-of-fiduciary-duty claim against her based on her withdrawing funds from the Trust. We remand this case to the trial court for further proceedings consistent with this opinion.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: March 14, 2024